2000 SD 52

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Moyad Abdullah ALIDANI, Defendant and Appellant.**

**No. 20965.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 2000.

Decided April 19, 2000.

Mark Barnett, Attorney General, Grant Gormley, Assistant Attorney General, Pierre, for plaintiff and appellee.

Steven K. Rabuck of Nichols & Rabuck, PC, Sioux Falls, for defendant and appellant.

GILBERTSON, Justice

[¶ 1.] Moyad Abdullah Alidani was convicted by a jury of violating SDCL 22–22–7, sexual contact with a minor. He appeals from this judgment of conviction raising issues primarily involving the child as a witness at his trial. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] Alidani lived with his brother, Mansour Alidani, in an apartment in Sioux Falls. Roxanne Helm, her husband, and her children (victim and her younger brother) had lived in the apartment directly above the Alidanis since August 1997. In October 1997, following an argument with her husband, Roxanne and her children moved into the Alidanis' one-bedroom apartment after knowing the brothers approximately one month.

[¶ 3.] Roxanne soon developed a romantic relationship with Mansour. On or about November 1, 1997, the Alidani brothers, Roxanne, and her children moved into another apartment building in Sioux Falls. Alidani's abuse of the victim took place in the living room and in Alidani's bedroom when Roxanne allowed victim to stay alone with Alidani while she went to the grocery store and ran errands. Roxanne would later testify she left victim alone with Alidani in this manner once a week. The victim was then seven years old. Alidani was twenty-nine.

[¶ 4.] In April 1998, victim was visiting her step-grandmother [hereinafter Grandmother] when Grandmother noticed her continually scratching her vaginal area. Grandmother asked her if there was a problem and victim indicated she wanted to show Grandmother. Grandmother took victim into the bathroom and noted victim's vaginal area was chapped and raw, "almost to the point of bleeding."[1] Grandmother asked if someone had been touching her there and victim reluctantly told Grandmother that Alidani had. Victim hid behind the shower curtain and expressed that now her mother would be angry with her and would make her and Mansour move out and that Alidani would be angry with her and wouldn't play with her anymore. Grandmother then called her son, victim's step-father, into the bathroom and victim told him what she told her Grandmother. Victim's claim was reported to the Department of Social Services. Victim was then moved out of the Alidani apartment. Roxanne and her son continued to reside with the Alidanis.

[¶ 5.] Alidani went to trial on the charge of sexual contact with a minor. He was found guilty and sentenced to serve fifteen years in the state penitentiary, with eight years suspended. Alidani appeals from the judgment of that conviction raising the following issues:

1. Whether the trial court abused its discretion in denying Alidani's motion for mistrial based on the court's statement to the victim in front of the jury that, "I know you are going to tell the truth."

2. Whether the trial court abused its discretion in permitting the victim-witness assistant to sit by and hold victim's hand during her testimony.

---

1. At trial it became known victim may have suffered from vaginal itching due to yeast infection which would recur approximately once per year, according to testimony of victim's aunt. Grandmother would testify the conditions she observed on victim's vaginal area in April 1998 were much more severe and pervasive than that of a yeast infection.

3. Whether the trial court abused its discretion in overruling Alidani's objections to victim's statements and to State's Exhibit 7.

4. Whether the trial court abused its discretion in permitting statements to be admitted under SDCL 19–16–38 as an exception to the hearsay rule.

### ANALYSIS AND DECISION

[¶ 6.] **1. Whether the trial court abused its discretion in denying Alidani's motion for mistrial based on the court's statement to the victim in front of the jury that, "I know you are going to tell the truth."**

[¶ 7.] Victim testified in the State's case-in-chief and was called by the State to testify on rebuttal. By this time, she had twice testified under oath – once at a pretrial hearing to determine her capacity for truthfulness and once at trial in the State's case-in-chief. When she took the witness stand on rebuttal, the day after she had previously testified, she immediately stuck her hand in the air to take the oath again. The trial court did not deem it necessary to again render the oath to her. The trial court stated to the victim:

> When you were here yesterday we gave you an oath to tell the truth, and remember, that just means that everything that you saw with your eyes and that you heard with your ears.
>
> Are you all set? You don't have to do it again. I know you're going to tell the truth.

The victim's rebuttal testimony was not directed at the issue of the sexual contact but whether anyone had made any promises to her. Victim testified her mother had promised that if Alidani did not go to jail, Mansour would buy her "lots of toys." There was no cross-examination or surre-buttal by the defense and no objection to the court's comments.

[¶ 8.] The next morning, however, prior to submission of the case to the jury, Alidani moved for a mistrial based on these comments, stating the jury could interpret them as the court's vouching for the truthfulness of the victim. The trial court denied the motion putting the previous day's events in context of an eight-year-old child who was taking the witness stand for a second time in the trial and need not take another oath. The court indicated its comment was one it would make to any witness in terms of the court's *expectation* that the witness will tell the truth, but particularly to a young child taking the stand again. The court stated it wanted this victim to know the courtroom was not an aggressive unpleasant place but one in which she should be comfortable. The court noted it did not believe its comments infringed on Alidani's right to a fair trial.

[¶ 9.] The denial of a motion for mistrial will not be overturned unless there is an abuse of discretion. Motions for mistrial are within the discretion of the trial judge and will not be granted unless there is a showing of actual prejudice to the defendant. *State v. Oster*, 495 N.W.2d 305, 310 (S.D.1993), *overruled on other grounds by State v. DeNoyer*, 541 N.W.2d 725 (S.D.1995); *State v. Bogenreif*, 465 N.W.2d 777 (S.D.1991); *State v. McDowell*, 391 N.W.2d 661 (S.D.1986).

[¶ 10.] On appeal, Alidani argues that as no medical evidence was presented, this case relied primarily on credibility, pitting the victim's word against his. Under these circumstances, according to Alidani, the court's comments were especially harmful as the jury was charged with determining which witness was telling the truth. According to Alidani, the comments put the court's stamp of authority on victim's testimony.

[¶ 11.] The context of these comments must not be forgotten in the analysis of this issue. Victim had already testified in the State's case-in-chief that the sexual contact had occurred. Anatomical drawings on which victim had indicated the places she had been touched by defendant had previously been entered as State's ex-

hibits, as had an explicit drawing made by the victim herself of defendant's penis and testicles. Testimony from John Schulte, social worker with the Department of Social Services, who interviewed victim at her elementary school and day care center, and Colleen Brazil, forensic investigator, who interviewed her at Child's Voice, had also been received. The challenged comments by the trial court were made on rebuttal, the day after the State rested its case, and immediately preceded testimony from victim, not about the sexual contact, but about a promise made to her by her mother. The comments were made in the context of the court's explaining to the victim that she need not take the oath again and, in this context, were nothing more than a reminder to the child that she is still under oath to tell the truth.

[¶ 12.] This is a contrast from the Illinois appellate court case cited by Alidani in his brief. In *People v. Rush*, 250 Ill.App.3d 530, 190 Ill.Dec. 1, 620 N.E.2d 1262 (1993), the court's comment was made during the child's testimony that there had been sexual abuse by defendant. The child became hesitant in his testimony and the trial court interrupted questioning with several inquiries of its own, stating, "I know you *were* telling the truth." *Id.* at 1264. (emphasis added). A motion for mistrial was denied, however, the conviction was reversed on appeal on grounds that the trial court's comments improperly bolstered the credibility of the witness "even where the judge might have intended his acts only to relax a frightened minor witness." *Id.* at 1266. In *State v. Chappell*, 26 Kan.App.2d 275, 987 P.2d 1114, 1117 (1999), addressing this same issue, the court cautioned that:

the mere possibility of prejudice from a remark will not result in a reversal where an interpretation can reasonably

be given to the remark that would render it unobjectionable.

(citing *Plains Transport of Kansas, Inc. v. Baldwin*, 217 Kan. 2, 535 P.2d 865 (1975)).[2]

[¶ 13.] Considering the timing and context of the court's comments regarding its expectation that the victim tell the truth, there is no showing that they prejudiced Alidani. While the comments could have been phrased with more judicial clarity, there has not been shown any intent by the trial court to remove the question of victim's credibility from the jury or to enhance her status with the jury. The court merely failed to clearly articulate what it meant and subsequently presented Alidani and this Court with a reasonable interpretation that would render the remarks unobjectionable. *Chappell*, 987 P.2d at 1117. Moreover, the judge gave the jury two cautionary instructions about his comments during the trial and the jury's role:

My actions during the trial in ruling on objections by counsel, or in comments to counsel, or in setting forth the law in these instructions are not to be taken by you as my opinion as to how this jury should determine the issues of fact. What the verdict shall be is your sole and exclusive responsibility.

Two judges preside over this case; the judge of the facts – you, the jury and the judge of the law, who is I. My function will be to preside over this trial to see that it proceeds in a fair, orderly, and efficient manner. I must also rule on questions of law arising during the trial and instruct you as to the law of the case. I am neutral in this case. *You should not take anything I may say or do during the trial as indicating what I think of the evidence or what I think your verdict should be.*

---

**2.** The factual circumstances of the present case also stand in stark contrast to that which occurred in *State v. Raymond*, 540 N.W.2d 407 (S.D.1995) (*Raymond I*) (reversed and remanded due to the State's improper bolstering of the victim's credibility). There, the State directly asked a social worker for her opinion as to the credibility of the victim after it had assured the trial court it would not do so as it did not believe the law permitted such inquiry. *Id.* at 408, n. 3–4. The State also referred to bolstering of the victim's credibility by victim's therapist during rebuttal closing argument. *Id.* at 410, n. 5.

(emphasis added). Alidani did not request any special instruction to the jury regarding the trial court's comments.

[¶ 14.] The trial court was present and had the opportunity to note whether its comments had any apparent effect on the jury. It specifically found in denying the motion for mistrial that it believed its comments had no effect. We defer to the trial court's judgment in the absence of any showing on the part of the defense of actual bias or prejudice. *State v. Stetter*, 513 N.W.2d 87, 90 (S.D.1994) *cert. denied*, 511 U.S. 1146, 114 S.Ct. 2173, 128 L.Ed.2d 894. Under this record and in this factual context, Alidani has not met his burden of proving reversible error.

[¶ 15.] **2. Whether the trial court abused its discretion in permitting the victim-witness assistant to sit by and hold victim's hand during her testimony.**

[¶ 16.] The trial court made several adjustments to make the courtroom and court proceedings less frightening for the then eight-year-old victim. The trial court permitted the victim-witness assistant, Gail Scott, to sit beside the victim and hold her hand during victim's testimony.[3] Outside the presence of the jury, the court heard Alidani's objections to this request by the State and overruled them.

[¶ 17.] SDCL 22–1–11 permits the victim-witness assistant to accompany the victim in any criminal proceeding. The trial court has broad discretion to determine the mode and manner of witness' testimony and will be reversed only for abuse of that discretion. *State v. Kietzke*, 85 S.D. 502, 186 N.W.2d 551, 554 (1971). The majority of courts having examined this question have found no reversible error in permitting a parent, relative, friend, guardian ad litem, school employee, clergyman, prosecutor, or other support person to accompany a child victim during her testimony. Carol A. Crocca, *Propriety and Prejudicial Effect of Third Party Accompanying or Rendering Support to Witness During Testimony*, 82 A.L.R.4th 1038, 1041–51 (1990).[4] A balancing test has often been applied in which the State's interest in protecting the witness and hearing the testimony is weighed against the possible prejudice to the defendant. *Id.* at 1041. "[T]he common thread running through the[se] holdings is that when the accompanying party does not speak, prompt the witness, or in any manner attempt to disrupt or influence the trial, the trial judge's discretion is not abused in permitting an adult support person to be in close proximity to a minor while the minor testifies." *State v. Rowray*, 18 Kan. App.2d 772, 860 P.2d 40, 44 (1993).

[¶ 18.] Here, the court balanced the defendant's objections against the court's desire to make testifying "the least frightening situation" for the minor victim. In overruling Alidani's objection that Ms. Scott's presence would appear to be a "stamp of approval" by the State on the

---

3. Victim was unable to look to her mother for support at trial. Roxanne did not believe her daughter and testified for the defense.

4. *See Baxter v. State*, 522 N.E.2d 362 (Ind. 1988) *cert. denied*, 501 U.S. 1255, 111 S.Ct. 2900, 115 L.Ed.2d 1064 (1991) (no showing of prejudice and no error when mother of 9–year–old victim of sexual abuse held victim's hand during testimony); *People v. Kabonic*, 177 Cal.App.3d 487, 223 Cal.Rptr. 41 (1986) (harmless error to permit 6–year–old victim to sit on mother's lap while testifying even though statutory procedural requirements had not been met); *State v. Rogers*, 213 Mont. 302, 692 P.2d 2 (1984) (no prejudice shown and no abuse of court's discretion in permitting 4–year–old victim of sexual assault to sit on prosecuting attorney's lap while testifying), *overruled on other grounds by State v. Olson*, 286 Mont. 364, 951 P.2d 571, 577 (1997) (child victim's testimony does not need to be corroborated to support a conviction of sexual assault); *but see State v. Rulona*, 71 Haw. 127, 785 P.2d 615 (1990) (conviction reversed where statute permitted victim-witness assistant to accompany victim to court proceedings and trial court permitted 8–year–old victim to testify from lap of sexual abuse counselor without a showing of compelling necessity).

victim's testimony, the trial court reminded Alidani that the jury understands the State endorses its witnesses; otherwise it would not have brought the charges and called these witnesses. The trial court ruled Alidani's reasons were not sufficient to overcome the court's desire to make the victim's courtroom experience less frightening.

[¶ 19.] In the present case, the record reveals (and Alidani admits), that victim testified in a straightforward manner; neither exhibiting fear of the court proceedings nor of him. Alidani argues this shows the accompanying third party was not required and only served to bolster the victim's testimony with the jury. However, it may also show that the trial court was successful in making the courtroom as comfortable an environment as possible for the minor victim so that she could testify freely. Moreover, there is no evidence in the record of any influence on victim's testimony attributable to Ms. Scott's presence. Alidani does not claim any hesitation by victim or glances at Ms. Scott for confirmation during her testimony. It appears from this record that Ms. Scott acted properly in solely being present in the courtroom as support for the victim and did not act or speak in a suggestive manner in any way. *Rowray,* 860 P.2d at 44. As no abuse of discretion has been shown, we affirm.

[¶ 20.] **3. Whether the trial court abused its discretion in overruling Alidani's objections to victim's statements and to State's Exhibit 7.**

[¶ 21.] Alidani claims the trial court abused its discretion in admitting victim's statements and victim's drawing describing his genitals. Evidentiary rulings by the trial court are presumed correct and reviewed under an abuse of discretion standard. *State v. Walton,* 1999 SD 80, ¶ 9, 600 N.W.2d 524, 528 (citing *State v. Larson,* 1998 SD 80, ¶ 10, 582 N.W.2d 15, 17).

[¶ 22.] At trial, victim testified that Alidani touched her "privacy" and asked her to touch his "privacy" in an up and down motion she made with her hand until "milk" (she stated the term was told to her by Alidani) came out and he wiped it up with a towel. She also testified regarding a detailed drawing of Alidani's genitals made earlier in the prosecutor's office when the prosecution had asked her what they looked like. Victim herself asked for a piece of paper so she could draw her response to this question. She then described the drawing for the jury in detail. Testimony regarding this drawing drew an objection from Alidani on grounds of hearsay, which the trial court overruled.

[¶ 23.] Alidani claims victim's statements and drawing constitute inadmissible hearsay. The rules defining hearsay, of which there are many exceptions, first require "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." SDCL 19–16–1(3). Victim's testimony about Alidani's sexual contact with her were made in court and constituted admissible evidence, not hearsay. Victim's drawing was not a statement, it was an illustration. Also, her description and explanation of that drawing was made at trial and was subject to cross-examination, and therefore was not hearsay. We affirm.

[¶ 24.] **4. Whether the trial court abused its discretion in permitting statements to be admitted under SDCL 19–16–38 as an exception to the hearsay rule.**

[¶ 25.] SDCL 19–16–38 provides in part that:

A statement made by a child under the age of ten ... describing any act of sexual contact or rape performed with or on the child by another ..., not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings against the defendant or in any proceeding under chapters 26–7A,

26–8A, 26–8B and 26–8C in the courts of this state if:

(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child . . .:

(a) Testifies at the proceedings . . .

. . .

No statement may be admitted under this section unless the proponent of the statement makes known his intention to offer the statement and the particulars of it, including the name and address of the declarant to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet the statement.

The trial court in this case held a pretrial hearing pursuant to this statute and found sufficient reliability for victim's statements that Alidani had sexual contact with her. The court further found that the questions asked of her by the three who had questioned her about the contact, her Grandmother, Schulte, and Brazil, as well as the questions asked by the attorneys at the hearing, were non-directive, non-suggestive questions that further offered guarantees of trustworthiness of the victim's responses. The trial court considered on the record all the factors we have previously recognized as foretelling reliability.

The factors for determining whether hearsay statements by a sexually abused minor are sufficiently reliable for admissibility under SDCL 19–16–38 are: the age and maturity of the child, the nature and duration of the abuse, the relationship of the child to the offender, the consistency of repetition and the reliability of the assertions, and the reliability of the child witness.

*State v. Buller,* 484 N.W.2d 883, 886 (S.D. 1992), *cert. denied,* 506 U.S. 887, 113 S.Ct.

248, 121 L.Ed.2d 181 (citing *State v. Floody,* 481 N.W.2d 242, 251 (S.D.1992)).

[¶ 26.] Testimony regarding this contact was presented at trial by victim, Grandmother, Schulte, and Brazil.[5] Alidani was provided the opportunity to cross-examine all of these witnesses. Although at trial, he objected to the playing of the videotaped interview made by Brazil at Child's Voice, he made no objection to testimony from the victim, Grandmother or Schulte based on hearsay. On appeal, he fails to persuade us that the trial court abused its discretion in admitting this testimony, only claiming that the degree of reliability required by *State v. Thompson,* 379 N.W.2d 295 (S.D.1985) was not met. However, in *Buller,* we stated that *"Thompson requires only that 'the determination of reliability must be made prior to the admission of the hearsay.'"* 484 N.W.2d at 886 (quoting *Thompson,* 379 N.W.2d at 298). The trial court made this determination prior to trial and no error has been shown.

[¶ 27.] We affirm on all issues.

[¶ 28.] MILLER, Chief Justice, and SABERS and KONENKAMP, Justices, concur.

[¶ 29.] AMUNDSON, Justice, concurs in part and dissents in part.

AMUNDSON, Justice (concurring in part, dissenting in part).

[¶ 30.] I dissent on issue one.

[¶ 31.] Had the trial court concluded its comments after the first paragraph, as shown in paragraph seven of the majority opinion, there would have been no problem. On the other hand, when you state in open court in front of the jury "I know you're going to tell the truth" (referring to the victim), the trial court lends its position to the testimony of the victim. That causes a problem in my mind.

[¶ 32.] I find the rationale and logic in the decision set forth in *People v. Rush,* 250 Ill.App.3d 530, 190 Ill.Dec. 1, 620

---

**5.** All four also testified at the SDCL 19–16–38 hearing.

N.E.2d 1262 (1993), to be applicable to the present case. In *Rush*, the court stated,

> Defendant contends that the trial court prejudicially invaded the province of the jury by stating to complainant, in the presence of the jury, "I know you were telling the truth." The appellate court recently rested the principles applicable to review of trial court comments:

> > "[T]he trial judge himself must ... not make any comments or insinuations indicative of an opinion on the credibility of a witness. [Citation.]

> > One of the reasons behind the rule that the trial judge must exercise a high degree of care to avoid influencing the jury in any way [citation] is based on the belief that the trial judge has immense influence over the jury. [Citation.] Another very fundamental reason is that every defendant is entitled to a trial that is free from improper and prejudicial comments on the part of the trial judge.... For the comments or questioning by a trial judge to constitute reversible error, the defendant must demonstrate that they were a material factor in the conviction or that prejudice appears to have been the probable result." *People v. Brown* (1990), 200 Ill.App.3d 566, 576–77, 146 Ill.Dec. 346, 558 N.E.2d 309.

These principles apply even when the witness is a minor. (See *People v. Bradley* (1984), 128 Ill.App.3d 372, 378, 83 Ill.Dec. 701, 470 N.E.2d 1121.) Although Illinois courts have not confronted trial court behavior possibly intended to calm a frightened testifying child, courts in other states have held that in these cases, as in any other criminal case, the trial judge must not, either by her words or acts, give the jury the impression that the judge finds the child's testimony credible. (*See State v. Suttles* (Tenn.1989), 767 S.W.2d 403; *State v. Zamorsky* (1978), 159 N.J.Super. 273, 387 A.2d 1227.) We agree. The defendant has a right to a trial free from a judge's comments bolstering the credibility of the State's witnesses even where the judge might have intended his acts only to relax a frightened minor witness.

The State does not argue that the trial court's comment was proper. Instead the State contends that the remark could not have prejudiced the jury against defendant.

In *People v. Crane* (1976), 34 Ill. App.3d 850, 341 N.E.2d 97, the State's key witness in a burglary case was the defendant's accomplice. On cross-examination the witness admitted that the State agreed to recommend probation for him in exchange for his guilty plea and his testimony against defendant, and he agreed to testify to escape incarceration. The trial court then asked the witness:

> "[Y]ou understand the penalties of perjury, do you not?
>
> A. Yes.
>
> Q. And the answer which you have given to all questions put to you have been true and correct to the best of your knowledge?
>
> A. Yes.
>
> Q. Notwithstanding the reasons for the questions or the answers or the reasons for your giving this testimony, what you have said is absolutely true and correct?
>
> A. Yes." *Crane*, 34 Ill.App.3d at 853–54, 341 N.E.2d 97.

The appellate court held that the questions served to rehabilitate the witness "and lend the exalted weight of the court" to his credibility. (*Crane*, 34 Ill. App.3d at 854, 341 N.E.2d 97.) We find that the questioning by the trial court in this case, together with the comment that it knew the victim was telling the truth, improperly lent the exalted weight of the trial court to the victim's testimony.

The State contends that the trial court in this case cured any error with his later comment that he did not intend to express any opinion on credibility, and the jury was to evaluate the credibility

of the witnesses. In *People v. Black* (1970), 130 Ill.App.2d 996, 266 N.E.2d 458, *aff'd* (1972) 52 Ill.2d 544, 288 N.E.2d 376, the trial court recognized that he had made an improper remark and immediately admonished the jury to ignore it. The appellate court affirmed the conviction, finding that the immediate reaction partially cured the effect of the improper comment, and the error was not prejudicial because the evidence of guilt was overwhelming.

190 Ill.Dec. 1, 620 N.E.2d at 1266–67.

[¶ 33.] The trial court's comments "rang the bell" and no admonition by the court thereafter can unring it. Therefore, I would remand this case for a fair retrial, which in my opinion, was not the case on this maiden voyage.

[¶ 34.] I concur on the remaining issues.