**STATE OF HAWAII**, Plaintiff–Appellee, v. **KEILA SUKA, JR.**, Defendant–Appellant

NO. 12919

(CR. NO. 87–0332)

JUNE 21, 1989

LUM, C.J., NAKAMURA, PADGETT,
HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY WAKATSUKI, J.

Defendant–Appellant Keila Suka, Jr. (Defendant) appeals from his convictions of two counts (I & IV) of Rape in the First Degree, Hawaii Revised Statutes (HRS) § 707–730(1)(a) (1985), two counts (II & VI) of Kidnapping, HRS § 707–720(1)(d) (1985); three counts (III, VII & VIII)

of Sexual Abuse in the First Degree, HRS § 707–736(1)(a) (1985); and one count (V) of Sodomy in the First Degree, HRS § 707–733(1)(a) (1985).

All of the alleged offenses arose out of incidents occurring on May 9, 1986 and May 16, 1986. The complainant to the above offenses testified that on both days the appellant committed the various sexual acts and restraints alleged in the above counts without her consent. Defendant testified that the complainant consented to his conduct.

## I.

Defendant contends that the presence of the representative of the Victim Witness Kokua Program, Jackie Phillips (Jackie), sitting next to the complainant and standing behind and placing her hands on complainant's shoulders during the complainant's testimony violated defendant's constitutional due process right to a fair and impartial trial. We agree.

Complainant took the stand on the first day of trial. Upon being asked by the prosecutor to describe how she met defendant, the complainant broke down and cried. After an initial recess, the prosecution was granted a recess till after lunch because the complainant was not ready to proceed. When the court reconvened after lunch, defendant's counsel approached the bench and noted that it appeared that a representative from the Victim Witness Kokua Program, Jackie, was going to be sitting with the complainant during her testimony. Counsel objected to this procedure. The prosecutor noted that the complainant was visibly upset that morning and argued that Jackie's presence would enable the complainant to continue testifying. The prosecutor stated that the complainant requested Jackie's presence because it would "help her and she would appreciate it." The court ruled that it would allow Jackie to sit with the complainant during her testimony provided the prosecutor laid a foundation for her presence.

The following examination occurred before the jury:

BY MS. SILBERSTEIN:

Q Nani, when we broke off for lunch this morning, you were very upset. And do you remember talking to me about having someone sit with you for this afternoon's session?

A Yes.

Q   And how do you feel? Would it help you to have someone sitting with you while you testify, such as the lady to your right?

A   Yes.

Q   How do you know the lady to your right?

A   'Cause she helped me when I needed somebody to talk to.

Q   Okay. That's Jackie Phillips from the Victim Kokua department; is that right?

A   Yes.

Q   So you would like to have her with you?

A   Yes.

Q   If the Court tells you that you're not allowed to talk to her but she can only be there with you, will you be able to follow that rule?

A   Yes.

MS. SILBERSTEIN:  Your Honor, the State would request that Miss Phillips sit with the victim during her testimony.

THE COURT:  I'll grant the request.

Complainant then proceeded to testify to the incidents occurring on May 9, 1986. At one point, the trial court, apparently in response to the complainant's crying, called a recess. The following exchange then took place:

(The following proceedings were held at the bench:)

MR. BOUSLOG:  Your Honor, I'd like the record to reflect that prior to the Court coming into session and now that the Court is in session, that the Victim Witness advocate is standing behind the witness with her hands on her shoulders. And it appears that this is going to be the way that the testimony is going to proceed.

I object strenuously to—I think there's already a very strong sympathy factor here, and I think at this point it's going to unduly prejudice the case in this situation and I don't think there's any showing of need. Obviously, she can testify she'd like it that way, but at this point I don't think it's justified. And in any event I don't think it's justified under any circumstances, because of the sympathy factor.

THE COURT:  Madam Prosecutor.

MS. SILBERSTEIN: Yes, Your Honor. I don't think that this action by the victim advocate is prejudicial in any way. She still will not be having any audible contact with the witness. She will not be talking to her. The physical contact with the victim will assist her in testifying, and, in fact, it might reduce some of her crying because of the fact that she has that support with her. The State is not attempting to induce any sympathy factor but merely trying to help the victim get through this easier and more quickly.

THE COURT: I'll overrule the objection, however, require that the prosecutor lay a foundation from the witness.

MS. SILBERSTEIN: Very well.

(The following proceedings were held in open court:)

BY MS. SILBERSTEIN:

Q    Nani, since we took the recess Jackie Phillips is now standing behind you instead of sitting on the chair. Is there a reason why she's moved up to that place for you?

A    So she could comfort me.

Q    Would it help you to have her touching you behind you?

A    Yes.

Q    You understand that she cannot talk to you at all; is that right?

A    Yes.

MS. SILBERSTEIN: Your Honor, the State would request that Miss Phillips stay where she is.

THE COURT: I'll grant the request.

The complainant then continued with her description of the events on May 9, 1986 and May 16, 1986. The prosecutor completed her direct examination and the court adjourned.

The next morning, defense counsel renewed his objection to Jackie's presence, stating that an adequate foundation had not been provided to show that her presence was necessary. Counsel complained that the prejudicial effect of her presence outweighed the demonstrated need for it. The court, however, ruled that no further foundation was necessary for the following reasons:

Throughout her testimony the Court has noted—and it's also displayed this morning—that the complaining witness has had

her left hand against her facial area, and she's been testifying with her head and eyes down. Which leaves the Court with the definite impression that it's the defendant's presence which causes her action. It's nothing that the defendant is doing. But it leaves the Court with the firm impression that she is either embarrassed, scared, or both of the defendant.

Having the representative of Victim Kokua present in court is something which the jury knows and jury may weigh and consider in its consideration of the complaining witness' testimony. However, I believe having that person here is necessary for the proceedings to go forth and, more importantly, give the defendant his right to confront the complaining witness.

And he has a right of confrontation under the Constitution.

Defense counsel then proceeded with his cross–examination.

We are not convinced that Jackie sitting with the complainant and standing behind her with her hands on her shoulders during the complainant's testimony did not unfairly bolster complainant's credibility. The jury might very well have concluded that Jackie being present supported complainant's story or re–assured complainant's veracity. The jury could very well have surmised that Jackie had extensive talks with the complainant, and/or knows of other information not presented to the jury that convinces Jackie that complainant is telling the truth. Thus, Jackie's presence with and laying her hand on the shoulder of complainant during her testimony could have had the effect of conveying to the jury Jackie's belief that complainant was telling the truth, thereby denying defendant the right to a fair and impartial trial.[1]

The State argues and the trial court agreed that Jackie's presence was necessary for the trial to go forth. But the record does not support the conclusion that the complainant could not testify without Jackie being

---

[1] We note, however, that accompaniment by a *parent* or *other close relative* would be less prejudicial than would accompaniment by a victim/witness counselor as the former is more likely to be seen as family support rather than as vouching for the witness' credibility. On the other hand, the accompaniment of an unrelated victim/witness counselor who is perceived as more neutral is more likely to be seen as vouching for the witness' credibility. Also, the prejudicial impact of accompaniment would generally diminish as the witness' age declines because the jury would be less likely to perceive the accompaniment as vouching for the witness' credibility. Instead the jury would view it as needed assistance to a tender and fragile witness.

present next to her. The complainant was 15 years old and could generally be expected to testify more easily than would a younger child.[2] The record only indicates that the complainant was having difficulty testifying without crying; that Jackie's presence would "help" her to testify; that Jackie's presence was "comforting," and that she would "like to have Jackie with" her while testifying. The complainant, however, was never asked whether she would be able to testify alone (possibly after a longer recess), or with Jackie sitting in the audience of the courtroom in complainant's line of sight as alternatives to allowing Jackie's presence with and touching of the complainant.[3]

This court is cognizant of HRS § 621–28 which provides that:

A child less than fourteen years of age, involved in a judicial proceeding, including a grand jury proceeding, shall have the right to be accompanied by a parent, a victim/witness counselor, or other adult designated by the court. The accompanying person may be placed side by side with the child at the discretion of the presiding judge or court officer; provided that this position does not interfere with the proceedings of the court. The accompanying person shall not communicate in any manner with the child unless directed by the presiding judge or court officer.

The complainant was 15 years old at the time she testified at trial, and therefore, HRS § 621–28 is inapplicable.

Here, there is nothing in the record to establish that Jackie's accompaniment and placing of her hands on the complainant's shoulders were necessary to allow complainant to go forward with her testimony. Furthermore, we conclude that the bolstering of complainant's credibility by Jackie's accompaniment and shoulder–touching were prejudicial to defendant, thereby violating his due process right to a fair and impartial trial.

---

[2] We note, however, that a court would generally find it easier to conclude that accompaniment is necessary as the witness' age declines. *Cf. Baxter v. State*, 522 N.E.2d 362 (Ind. 1988) (mother allowed to hold child's hand throughout testimony because trial court has discretion to allow special measures aimed at putting young children at ease on the witness stand).

[3] The issue of whether Jackie's presence would have been consistent with due process in the case where other alternatives had been explored but had failed need not be decided.

## II.

Defendant also contends that the trial court erred in refusing to instruct the jury that consent of the complainant is a defense to the charges of first degree rape, sodomy, and sexual abuse. We agree.

Under HRS § 702–233, consent to the conduct alleged is a defense "if the consent negatives an element of the offense." The first degree sexual offenses charged against defendant all include the element of forcible compulsion. Consent is a valid defense to the first degree sexual offenses since consent to the sexual conduct clearly negatives forcible compulsion. *Cf. State v. Lira*, 70 Haw. ___, ___, 759 P.2d 869, 872 (1988).

The defendant in a criminal case is entitled to an instruction on every defense having any support in the evidence, no matter how weak, inconclusive or unsatisfactory the evidence may be. *See Lira*, 70 Haw. at ___, 759 P.2d at 873; *State v. O'Daniel*, 62 Haw. 518, 527–28, 616 P.2d 1383, 1390 (1980). Appellant testified that the complainant consented to all the sexual conduct. Defendant was therefore entitled to have the jury instructed on the defense of consent.

The State argues that because "consent" is the flip side of forcible compulsion and the jury was instructed that it must find forcible compulsion in order to convict defendant of each of the sexual offenses, the consent instruction was unnecessary. This argument was rejected by this Court in *State v. Lira*, 70 Haw. at ___, 759 P.2d at 873–74, and we reaffirm the rejection. We acknowledge that it is extremely difficult to conceive of a situation where a jury finds that the victim consented and still finds forcible compulsion. Nonetheless, the instruction given to the jury on the definition of forcible compulsion[4] is worded in a way that does not make the mutual exclusion of consent and forcible compulsion obvious. Only the giving of a consent instruction will ensure that the defense of consent is not compromised.

---

[4]The jury was instructed that: "Forcible compulsion means the use of or attempt to use one or more of the following to overcome a person: One, a threat, express or implied, that places a person in fear of bodily injury to the individual or another person or in fear that the person or another person will be kidnapped; or, two, physical force. Bodily injury means physical pain, illness or any impairment of physical condition.

In view of the record indicating some evidence of consent, we hold that the trial court erred in refusing to give the jury an instruction on the defense of consent to the sexual offenses.

## III.

In view of the foregoing, the issue of the alleged due process violation in the extended term sentencing need not be decided.

All convictions are vacated and the case is remanded for a new trial.

*Peter England Roberts* (*Linda C. Ramirez* on the brief), Deputy Public Defender, for defendant–appellant.

*Alexa D. M. Fujise*, Deputy Prosecuting Attorney, for plaintiff–appellee.