[No. E018206. Fourth Dist., Div. Two. July 15, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
DENTON WESLEY JOHNS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 2. 3. 4. and 5.

## COUNSEL

David Joseph Macher, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Marilyn L. George, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

RAMIREZ, P. J.—A jury convicted Denton Wesley Johns of oral copulation of a person under the age of 16 (Pen. Code, § 288a, subd. (b)(2)), committing lewd and lascivious acts on a minor (Pen. Code, § 288, subd. (a)), contributing to the delinquency of a minor (Pen. Code, § 272), and possession of child pornography (Pen. Code, § 311.11, subd. (a)). In bifurcated proceedings, the jury found that he had suffered two prior strike convictions, both for committing lewd and lascivious acts on a minor. (Pen. Code, § 667, subds. (b)-(i).) He was sentenced to prison for two consecutive twenty-five-year-to-life terms and appeals, contending his right to confrontation was violated by the presence of a support person while one of his victims was testifying, the trial court erred in denying his request to inform the jury of the applicability of the three strikes law to this case, he suffered only one, not two, strike priors, the matter should be remanded in light of *People* v. *Superior Court (Romero)*,[1] and his sentence was cruel and unusual. We reject his contentions and affirm.

### FACTS

Johns showed the first victim, who was the son of the maintenance man of Johns's apartment complex, pictures of nude women, a woman performing oral sex on a man, and Johns orally copulating another man. At some point between June 1994 and September 1995, when the victim was either 14 or 15 years old, Johns performed oral sex on him.

Johns showed the second victim, who lived at the complex, pictures of nude men and boys, some of them engaged in oral sex. Johns told this victim that he had orally copulated the first victim. Johns asked this victim to pull his pants down so Johns could see the child's penis, but the latter declined. Johns even offered the boy money to orally copulate him. During the summer of 1995, Johns twice touched this victim's penis over his clothes. The boy, who was 11 at the time, pushed Johns's hand away and left.

Also during that summer, Johns twice touched the third victim's penis over his clothes. This victim was also 11 years old.

---

[1]*People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628].

## ISSUES AND DISCUSSION

### 1. *Presence of Support Person*

Before the second victim testified, the prosecutor told the trial court, ". . . [P]ursuant to 8[6]8.5[2] of the Penal Code he would prefer to have his mother sit next to him." Defense counsel stated, "I would object." The trial court granted the prosecutor's motion. The mother did not testify. This victim was 11 years old at the time of trial.

█ Johns now claims that this violated his right to confrontation. His argument relies principally on *People* v. *Adams* (1993) 19 Cal.App.4th 412 [23 Cal.Rptr.2d 512], which, of course, does not bind us, and the cases it principally relies upon, *Coy* v. *Iowa* (1988) 487 U.S. 1012 [108 S.Ct. 2798, 101 L.Ed.2d 857] and *Maryland* v. *Craig* (1990) 497 U.S. 836 [110 S.Ct. 3157, 111 L.Ed.2d 666], which do.

In *Coy*, the minor victims testified through a screen that allowed the defendant to dimly see them, but the victims could not see the defendant at all. Following much language about the importance of face-to-face confrontations, the Supreme Court concluded, "It is difficult to imagine a more

---

[2]Penal Code section 868.5 provides as follows: "(a) Notwithstanding any other law, a prosecuting witness in a case involving a violation of Section . . . 288 [or] 288a . . . , shall be entitled, for support, to the attendance of up to two persons of his or her own choosing, one of whom may be a witness, at the preliminary hearing and at the trial, . . . during the testimony of the prosecuting witness. Only one of those support persons may accompany the witness to the witness stand, although the other may remain in the courtroom during the witness' testimony. The person or persons so chosen shall not be a person described in Section 1070 of the Evidence Code unless the person or persons are related to the prosecuting witness as a parent, guardian, or sibling and do not make notes during the hearing or proceeding.

"(b) If the person or persons so chosen are also prosecuting witnesses, the prosecution shall present evidence that the person's attendance is both desired by the prosecuting witness for support and will be helpful to the prosecuting witness. Upon that showing, the court shall grant the request unless information presented by the defendant or noticed by the court establishes that the support person's attendance during the testimony of the prosecuting witness would pose a substantial risk of influencing or affecting the content of that testimony. . . . In all cases, the judge shall admonish the support person or persons to not prompt, sway, or influence the witness in any way. Nothing in this section shall preclude a court from exercising its discretion to remove a person from the courtroom whom it believes is prompting, swaying, or influencing the witness.

"(c) The testimony of the person or persons so chosen who are also prosecuting witnesses shall be presented before the testimony of the prosecuting witness. The prosecuting witness shall be excluded from the courtroom during that testimony. Whenever the evidence given by that person or those persons would be subject to exclusion because it has been given before the corpus delicti has been established, the evidence shall be admitted subject to the court's or the defendant's motion to strike that evidence from the record if the corpus delicti is not later established by the testimony of the prosecuting witness."

obvious or damaging violation of the defendant's right to a face-to-face encounter." (*Coy* v. *Iowa*, *supra*, 487 U.S. at p. 1020 [108 S.Ct. at p. 2803, 101 L.Ed.2d at pp. 866-867].) The court went on to hold that if an exception to the confrontation clause requirement of a face-to-face encounter exists, it must be one that is necessary to further an important public policy. (*Id.* at p. 1021 [108 S.Ct. at p. 2803, 101 L.Ed.2d at p. 867].) A nonindividualized presumption of trauma, such as existed in the legislation which permitted the presence of the screen, was insufficient, concluded the court. (*Ibid.*)

*Craig* set forth the limitations of the exception mentioned in *Coy*. In *Craig*, the minor victim testified via a one-way, closed circuit television. The court enumerated the components of the confrontation clause as (1) the face-to-face confrontation, (2) the oath, (3) the cross-examination, and (4) the jury's observation of the witness's demeanor. (*Maryland* v. *Craig*, *supra*, 497 U.S. at p. 846 [110 S.Ct. at p. 3163, 111 L.Ed.2d at p. 679].) The court went on to acknowledge the importance of protecting child victims from trauma while testifying against their abusers and held that where the state makes an adequate showing of necessity, and reliability is otherwise assured through the presence of factors 2 through 4, *ante*, an exception to the confrontation clause is permissible.

Here, only the last component of the confrontation clause was impacted—and not significantly, at that. Relying on language in *Adams*, however, Johns asserts that *any* impact on *any* of the components of the confrontation clause constitutes a violation of the clause, which must be justified by a necessity that an important public policy be furthered. To the extent *Adams* may suggest this, we disagree with it. However, *Adams* involved factors not present here.

In *Adams*, *supra*, 19 Cal.App.4th 412, the support person was also a witness at trial. Thus, there was an issue of intertwining the credibility of that witness and the victim in the eyes of the jury, which was not present here. In addition, there was an allegation in *Adams* that the support person, who was the victim's father, had abused the victim, which could have motivated the latter to report the crimes as she did. Thus, there was more of a danger that his presence with her on the stand could influence her testimony, which was not present here. Finally, because in *Adams* the support person was a witness, and, therefore, under Penal Code section 868.5, subdivision (b), his presence had to be "helpful" to the victim while she was testifying,[3] the appellate court concluded that his presence actually affected the victim's performance on the stand and her demeanor. Here, in contrast, Penal Code section 868.5 did not require a showing of helpfulness

---

[3]See footnote 2, *ante.*

because the support person did not testify at trial.[4] The prosecutor told the trial court, outside the presence of the jury, that the victim "preferred" to have his mother, and the victim later testified, during cross-examination, that the reason he wanted her with him was because he "like[d her]." There was no assertion that she would be helpful to him, thus no basis for an assertion that her presence actually affected his performance and demeanor.

There is language in *Adams* which is supportive of our conclusion that the impact on the demeanor component of confrontation was insignificant. "In regard to appellant's assertions that the support person's presence at the stand bolsters the witness's testimony and operates as unsworn opinion evidence on the truth of the charges, there is minimal support in case law for appellant's view [citation] . . . . [¶] In *State* v. *Suka* (1989) 70 Hawaii 472 . . . , [t]he court suggested that a relative as [a support] person might have been less prejudicial because that person would more likely be seen as family support than as vouching for the witness's credibility." (*People* v. *Adams*, *supra*, 19 Cal.App.4th at pp. 440-441.) Frankly, we perceive no appreciable difference in the impact on the demeanor of a minor victim in the eyes of the jury between having a parent sitting in the courtroom spectator section and having one sitting next to the testifying child. In both cases, the parent is saying, "I am here to support my child," and nothing more. Even if a vouching could be construed from the presence of the parent, "[i]t is natural that a close family member will believe and be supportive of another family member while testifying." (*People* v. *Patten* (1992) 9 Cal.App.4th 1718, 1731 [12 Cal.Rptr.2d 284].) Certainly, the parent's presence in the courtroom spectator section could never be considered a violation of the confrontation clause. (*Id.* at p. 1727.)

*Adams* goes on to state, ". . . [An]other factor[] raised by appellant [as a potential consequence of the presence of a support person, i.e.], potential distraction [for the jury,] is to be considered in determining whether the procedure violates the confrontation clause. However, '[d]istraction and disruption in the courtroom are not absolutes, but are to be measured objectively in the context of the circumstances presented.' [Citation.]" (*People* v. *Adams*, *supra*, 19 Cal.App.4th at p. 440.)

In *People* v. *Patten*, *supra*, 9 Cal.App.4th at page 1726, the Court of Appeal noted the two most dangerous aspects of the presence of a support person as "(1) the potential of influencing the jury with a subconscious message that the victim is traumatized and therefore it is more likely the sexual assault occurred, and (2) the concern that the presence of a person

---

[4]See footnote 2, *ante.*

supporting the witness may add credibility to the witness's testimony—i.e., the support person is vouching for the credibility of the witness."

Due to the particular circumstances here, neither of these dangers existed. The victim testified in the presence of the jury that he wanted his mother with him because he liked her, thus dispelling any suggestion that he was too traumatized by the sexual assault to testify without her. As to vouching, we have already discussed the decreased risk of this when a parent, especially of a younger child, is the support person.

*Patten* goes on to state, "In [*Coy* v. *Iowa* and *Maryland* v. *Craig*] . . . , the mere utilization of the procedure infringed upon a constitutional right. Such cannot be said of the statute here. Penal Code section 868.5 allows the presence of up to two support persons during the testimony of the prosecuting witness. The statute clearly encompasses circumstances when the support persons are present in the audience section of the courtroom and without having any particular attention drawn to them. Such a procedure would result in minimal, if any, influence on a jury and would not rise to a level of possible infringement on the constitutional guarantee of due process. Thus, under the California statute, the absence of a requirement of a case-specific showing of necessity does not, as defendant argues, make this statute unconstitutional per se. This is so because procedures available to utilize support persons pursuant to the statute would not infringe any constitutional rights." (*People* v. *Patten, supra,* 9 Cal.App.4th at p. 1727, fn. omitted.)

2.-5.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

DISPOSITION

The judgment is affirmed.

Richli, J., and Ward, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 22, 1997.

---

*See footnote, *ante*, page 550.